

**SIGNED this 29 day of December, 2009.**

                                                                                  R. Thomas Stinnett
                                                          **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                                             Case No. 09-15726
                                                                                   Chapter 13
Gregory Scott Parrott &
Karen Sybil Parrott

       Debtors

Appearances:        Kenneth C. Rannick, Chattanooga, Tennessee, Attorney for Debtors

                          James M. Setters, Attorney for C. Kenneth Still, Chapter 13 Trustee

R. Thomas Stinnett, U. S. Bankruptcy Judge

       This memorandum deals with the chapter 13 trustee's objection to confirmation of the chapter 13 plan proposed by the debtors, Mr. and Mrs. Parrott. As to unsecured claims generally, the plan provides that they will be paid *pro rata* from the money left over after paying the debtors' attorney, the trustee's fees, and payments to particular creditors as provided in the plan. Another provision sets out particular payments for three unsecured student loan debts. The plan provides that the debtor will make monthly maintenance payments on each student loan debt and will cure the arrearages on two of the debts. In this context, maintenance payment apparently means the monthly contract payment. The

chapter 13 trustee contends that this provision classifies unsecured claims and unfairly discriminates against the class of other unsecured claims. 11 U.S.C. § 1322(b)(1). The court finds the facts as follows.

The plan provides for the debtors to pay to the chapter 13 trustee $1,490 every two weeks for 60 months. The payments are to come from Mr. Parrott's earnings.

The plan provides for the following payments on secured debts:

|  | Arrearage | Monthly Payment |
|---|---|---|
| GMAC (car loan) |  | $ 333.00 |
| Met Life (1st mortgage) | $4,100 @ $71/ month | $1,743.00 |
| HFC (2nd mortgage) |  | $ 385.47 |

The debtors scheduled the debt to GMAC as $15,000 with $2,115 of that as unsecured. GMAC filed a proof of a secured claim in the amount of $12,497.36. The contract interest rate is 7.5%.

First Horizon Home Loans filed a proof of claim for the first mortgage debt. The proof of claim includes an arrearage of $9,544.21. The arrearage is made up of missed monthly payments, late charges, and an inspection fee. The proof of claim also includes an attorney's fee of $300 for work done in the bankruptcy case. Finally, the proof of claim states that the monthly payment is $1,761.36.

No one has filed a proof of claim for the second mortgage debt, but the time for filing has not yet expired. The debtors scheduled the total second mortgage debt as $28,226.00.

As to the student loan debts, the plan provides:

|  | Arrearage | Monthly Maintenance |
|---|---|---|
| EdFund |  | $ 124.36 |
| Sallie Mae #9091422375-1 | $457 @ $10 / month | $ 107.20 |
| Sallie Mae #9994448919-1 | $156 @ $10 / month | $ 67.83 |

These provisions were set out in the secured claims section of the plan, instead of the special provisions section, but the debtor does not contend the student loan debts are secured.

The debtors scheduled three student loan debts,

| | | |
|---|---|---|
| EdFund | account 4021 | $9,626 |
| Sallie Mae | account 375-1 | $9,002 |
| Sallie Mae | account 919-1 | $4,782 |

ECMC filed a proof of claim listing the creditor as Sallie Mae on behalf of CSAC / EdFund. CSAC is the California Student Aid Commission. The amount of the claim is $4,883.91. ECMC also filed evidence that CSAC / EdFund transferred the claim to it.

ECMC filed another proof of claim for $10,322.34. It listed ECMC as the creditor. ECMC attached an Indemnification Agreement of Lost, Missing or Damaged Promissory Note. The heading of the agreement includes an EdFund logo. The agreement identifies Sallie Mae as the lender. The claims filed by ECMC, including the attachments, do not allow the court to match those claims to the account numbers used by the debtors. Nevertheless, the two filed claims correspond to the largest and smallest of the scheduled claims. For the purposes of calculation, the court will use the scheduled amount of the other claim ($9,002) and will treat the proposed payments of $107.20 per month and payment of an arrearage of $457 as payments intended for that claim.

The debtors scheduled unsecured debts of $52,479, which included the three student loan debts totaling $23,410. The proofs of claims filed by ECMC allow the court to increase the total of student loan debts to $24,208 and the total of the unsecured debts to $53,277. Other filed unsecured claims show a net increase of about $150 over the total of the scheduled amounts. To make this last calculation, the court assumed the claim filed by Household Finance is the same claim that was scheduled as a debt to Beneficial Tennessee. That brings the total of unsecured claims to $53,427.

The debtor should make about 130 payments to the trustee in 60 months. That makes a total of $193,700 to be paid to the trustee. Subtracting the trustee's fee of roughly 3% leaves $187,889

to distribute. Out of this amount, the plan provides for a fixed amount of payments on three secured claims and the three student loan debts. The plan payments on the student loan debts, not the claim amounts, should be used to calculate the remainder that will be available from the debtors' payments for distribution on the other unsecured claims. On the other hand, the claim amounts should be used to calculate the percentage payout on either kind of unsecured claim. The plan must also pay the debtor's attorney a fee estimated to be $3,000. The plan should also pay the arrearage amount and attorney's fee included in the proof of claim filed by the first mortgage holder, instead of the lower arrearage amount stated in the plan. The calculation of the dividend on unsecured debts, other than the student loans, should also take into account the amounts shown in the filed claims.

According to the trustee's calculations:

The dividends on the student loan debts under the proposed plan will be 78% on the two larger claims and 96% on the smallest claim.

The fixed payments under the proposed plan will leave enough money for dividend of about 53% on the unsecured claims other than student loan debts.

If the student loan debts were paid *pro rata* along with all the other unsecured debts, the dividend on all unsecured claims would be about 64%.

According to these statements, the amount paid on the other unsecured claims will be about $15,400. That agrees with the court's calculations. Indeed, the court's calculations came to almost exactly the same result for each of the percentages calculated by the trustee. The court calculated that if the plan did not include the classification, then the other unsecured claims would be paid about 10% more. That calculation assumes that creditors will file timely proofs of claims for all the scheduled unsecured debts. At 10%, the amount of the reduction will be around $3,000.

According to the debtor's brief, the plan treats the student loan debts as long-term debts. The statutes authorize the payment of an unsecured debt as a long-term debt if the last contract payment is due after the date of the final payment under the plan. Treating an unsecured debt as a long-term debt means the creditor will be paid the regular contract payments during the plan, and the balance of the debt will not be discharged even if the debtor completes the plan. 11 U.S.C. § 1322(b)(1), (5) & § 1328(a)(1).

The authority to treat an unsecured debt as a long-term debt is neither expressly nor logically an exception from the statutory rule that classifying unsecured claims cannot unfairly discriminate against any of the classes. *See, e.g., In re Labib-Kiyarash*, 271 B.R. 189 (9th Cir. B.A.P. 2001); *In re Belda*, 315 B.R. 477 (N. D. Ill. 2004), *appeal dismissed as moot*, *Belda v. Marshall*, 416 F.3d 618 (7th Cir. 2005); *In re Thibodeau*, 248 B.R. 699 (Bankr. D. Mass. 2000); *In re Colley*, 260 B.R. 532 (Bankr. M. D. Fla. 2000); *In re Chandler*, 210 B.R. 898 (Bankr. D. N. H. 1994); *In re Eiland*, 170 B.R. 370 (Bankr. N. D. Ill. 1994). 2 Keith M. Lundin, *Chapter 13 Bankruptcy* §§ 155.2 & 153.1 (3rd ed. 2007).

This is not a situation in which treating the student loan debts more favorably will aid the debtors' performance of the plan or otherwise provide a possible benefit for the other unsecured creditors. The classification is intended to reduce the balances due on the student loan debts after the debtors complete the plan. This will benefit the debtors because the unpaid balances can be discharged only if the debtors can prove that paying the debts would be an undue hardship. 11 U.S.C. § 523(a)(8) & § 1328(a)(2). Attempting to pay more on the student loan debts is good planning for the debtors' benefit with no benefit for the other unsecured creditors.

Favoring the student loan creditors does not take many dollars away from the other unsecured creditors, especially compared to the total of the proposed payments to the trustee over the 60 months of the plan. On the other hand, the classification reduces the payments to the other unsecured creditors by around 10% compared to what they would receive under a *pro rata* distribution without the classification. From the point of view of the other unsecured creditors, the classification is even more unfair. *McCullough v. Brown*, 162 B.R. 506 (N. D. Ill. 1993). The dividend on two of the student loan debts will be about 25% more than the dividend on other unsecured debts. The dividend on the smallest of the three student loan debts will be about 43% more. The court must also note that the debtors should easily be able to propose a modified plan to cure the problem raised by the classification in the proposed plan. The trustee's brief notes that the debtors have proposed an increase in their payments to raise the percentage paid to the other unsecured creditors. Of course, the debtors have not proposed a modified plan with the increase. They have been waiting on the court's decision. The court concludes that the plan

as proposed cannot be confirmed because the classification to favor the student loan claims unfairly discriminates against the other unsecured claims. The court will enter an order in accordance with its decision.

# # #